# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 10-329** |
| **MELVIN HUDSON** | **SECTION I** |

## ORDER & REASONS

Before the Court is *pro se* defendant Melvin Hudson's ("Hudson") motion[1] for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] The Court finds that Hudson has failed to present extraordinary and compelling reasons warranting his release and, after considering the applicable factors in 18 U.S.C. § 3553(a), the Court concludes that compassionate release is not warranted.

### I.

In 2013, Hudson pleaded guilty to Counts 1, 2, 5, 6, and 15–18, of a twenty-two count third-superseding indictment in this multi-defendant drug conspiracy.[3] Counts 1, 2, and 5 charged violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"): conspiracy to violate RICO, conspiracy to distribute and possess with intent to distribute over 280 grams of cocaine base, and conspiracy to possess firearms, respectively; Count 6 charged obstruction of justice; Count 15 charged distribution of a quantity of heroin; Count 16 charged possession of a firearm by a

---

[1] R. Doc. No. 779.
[2] R. Doc. No. 789.
[3] R. Doc. Nos. 69, 378, & 379.

convicted felon; Count 17 charged possession with intent to distribute a quantity of cocaine base; and Count 18 charged possession of a firearm in furtherance of a drug trafficking crime.[4] This Court sentenced Hudson, after accepting his Rule 11(c)(1)(C) plea agreement, to a total term of imprisonment of 300 months: 240 months as to each of Counts 1, 2, 5, 6, 15, and 17; and 120 months as to Count 16, all to be served concurrently.[5] Pursuant to the plea agreement, this Court imposed a consecutive term of 60 months as to Count 18.[6] Hudson is currently incarcerated at FCI Pollock; his projected release date is April 3, 2031.[7]

The government opposes Hudson's motion on the merits, conceding that he exhausted his administrative remedies by submitting a compassionate release request to his warden.[8] The government argues that Hudson has failed to show that extraordinary and compelling reasons warrant his release;[9] specifically, the government argues that Hudson's "[g]eneralized fear of COVID-19" is neither extraordinary nor compelling, particularly because Hudson was offered, and refused, the COVID-19 vaccine.[10] Further, the government rejects Hudson's remaining arguments that extraordinary and compelling reasons warrant his release: (1)

---

[4] R. Doc. No. 477, at 1–2 (Judgment).
[5] *Id.* at 3.
[6] Id.
[7] *Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 11, 2021).
[8] R. Doc. No. 789, at 2–3 ("The government agrees that more than 30 days have passed since the defendant's request to the warden, and that he therefore has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).").
[9] *Id.* at 10–19.
[10] *Id.* at 13 (citing R. Doc. No. 789-2, at 1).

2

coronavirus-related lockdowns at Pollock are not causing Hudson undue hardships any more than a lockdown at any other facility, (2) his 300-month sentence alone is not an extraordinary and compelling reason, and (3) his alleged rehabilitation is likewise not an extraordinary and compelling reason for release.[11]

Alternatively, the government argues that the sentencing factors in 18 U.S.C. § 3553(a) counsel against granting Hudson's motion.[12] Citing his factual basis, the government states that Hudson was a co-leader of the "Harvey Hustlers/Murder Squad" beginning in 2010.[13] The government points to Hudson's lengthy (and sometimes violent) criminal history, which includes convictions for aggravated assault with a firearm, battery of a police officer, and simple battery.[14] Meanwhile, his record in prison is not unblemished, including a sanction in 2014 for "possession of [a] sharpened weapon."[15]

## II.

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). This rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[16] For such a motion to be properly before the court, the defendant must either exhaust all

---

[11] *Id.* at 15–19.
[12] *Id.* at 19–23.
[13] *Id.* at 20 (citing R. Doc. No. 383).
[14] *Id.* at 21 (citing R. Doc. No. 443).
[15] R. Doc. No. 789-3, at 1.
[16] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

3

administrative remedies, or thirty days must elapse "from the receipt of [a compassionate release request] by the warden of the defendant's facility, whichever is earlier." *Id.*; § 3582(c)(1)(A).

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c). The court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the Bureau of Prisons ("BOP")—not defendants on their own—could move for compassionate release. The First Step Act changed that, but the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of them now contradict 18 U.S.C. § 3582(c)(1)(A).[17]

---

[17] For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13,

4

However, the Fifth Circuit recently clarified that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Nonetheless, the Fifth Circuit has also recognized that the policy statement still "informs [its] analysis." *Thompson*, 984 F.3d at 433.

### A. Exhaustion of Administrative Remedies

Section 3582, as mentioned above, allows a court to consider a defendant's compassionate-release motion only after the defendant exhausts administrative remedies, or 30 days elapse after the defendant submits a compassionate-release request to the warden. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement is "*not* jurisdictional but . . . *is* mandatory") (emphasis in original). As stated previously, the government concedes that Hudson satisfied this requirement.[18] Accordingly, the Court will consider the merits of Hudson's motion. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

A prerequisite to granting compassionate release is that the defendant shows an extraordinary and compelling reason justifying release. The Sentencing Commission's policy statement, though not binding for *pro se* compassionate release motions, still "informs" this Court's analysis of extraordinary and compelling reasons.

---

Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons[.]"); *see also United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy).

[18] R. Doc. No. 789, at 3.

5

*Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *Shkambi*, 993 F.3d at 393 (noting the policy statement is not binding for *pro se* motions). Again, the policy statement provides four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

Hudson makes four main arguments that, he says, constitute extraordinary and compelling reasons: (1) he "cannot adequately protect himself against infection [of COVID-19] in prison;" (2) he "has been forced to suffer unhealthy and strenuous hardships because of COVID-19"—*i.e.*, hardships resulting from lockdowns imposed at Pollock to curb the spread of the coronavirus; (3) the "length of his sentence should be taken into consideration and deemed an extraordinary and compelling reason to reduce his sentence;" and (4) he "has demonstrated [r]ehabilitation."[19] The Court rejects each argument in turn.

First, Hudson does not claim to suffer from any pre-existing condition that puts him at higher risk of suffering serious illness were he to contract COVID-19.[20] Consequently, his invocation of COVID-19 amounts to nothing more than a generalized fear of the virus, which is insufficient. *See, e.g., Thompson*, 984 F.3d at

---

[19] R. Doc. No. 779, at 7–12.
[20] Although Hudson previously claimed to suffer from "pre-existing conditions that make [him] vulnerable to COVID-19," in the instant motion, he expressly states that he "now abandons this particular claim as his pre-existing condition has now been determined to not meet the standards . . . that qualifies [sic] him as a person that would most likely not recover if he contracted the COVID-19 virus." *Id*. at 6–7.

6

435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *United States v. Cheek*, 834 F. App'x 957, 958 (5th Cir. 2021) (citing *Thompson* and noting the same).

To the extent this fear was ever considered compelling, its persuasive force as to Hudson is dampened by the fact that he refused the COVID-19 vaccine.[21] That undermines Hudson's argument that COVID-19 presents an extraordinary and compelling risk to him. *See, e.g.*, *United States v. Grandison*, No. 18-94, 2021 WL 2457542, at *2 (W.D. La. June 16, 2021) (gathering cases and reasoning that "Grandison cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk"); *United States v. Jackson*, No. 18-151, 2021 WL 2267539, at *3 (E.D. La. June 3, 2021) (Africk, J.) (finding no extraordinary and compelling reasons where, *inter alia*, the defendant refused the COVID-19 vaccine); *United States v. Reynoso*, No. 17-10350, 2021 WL 950081, at *2 (D. Mass. Mar. 12, 2021) ("[T]he sincerity of his concern for his health is dubious given that he rejected the opportunity to receive the COVID-19 vaccine."); *United States v. Robinson*, No. 17-611, 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021) (noting that courts are "nearly uniform[]" in so holding).[22]

---

[21] R. Doc. No. 789-2, at 2 (BOP record entitled, "COVID-19 VACCINE CONSENT – INMATE," on which Hudson checked a box stating "I decline to receive the COVID-19 vaccination" and signed his name adjacent thereto, dated April 8, 2021).

[22] This is not intended to suggest that a vaccine refusal categorically eliminates an inmate's ability to invoke COVID-19 as a ground for compassionate release. But where, as here, Hudson disclaims any pre-existing condition that puts him at risk of severe illness were he to contract the virus, his refusal to take the steps to mitigate that risk is telling.

7

Second, Hudson's reliance on pandemic-related prison lockdowns, even if it is compelling, is not extraordinary. He states that the long periods of isolation and lockdown that Pollock has imposed on him have led to "undue worry, stress, and anxiety that can lead to other health problems."[23] The Court takes the point, but to the extent this hardship confronts Hudson, it confronts other inmates at Pollock—and, for that matter, every prisoner in any other prison taking steps to curb the spread of the virus within its walls. It is more ordinary than it is extraordinary: "the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person." *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020); *United States v. Iruegas*, No. 18-366, 2021 WL 1169348, at *2 (S.D. Tex. Mar. 25, 2021) (same).

Third, Hudson attempts to shoehorn his 300-month sentence—a sentence for which he negotiated pursuant to his Rule 11(c)(1)(C) plea agreement[24]—into an argument about extraordinary and compelling reasons. But the policy statement does not countenance such an argument; again, the policy statement, when instructing courts to determine whether a reason is extraordinary and compelling,

---

[23] R. Doc. No. 779, at 9.
[24] The Court notes that Hudson's 300-month sentence was at least five years *shorter* than the bottom-of-the-guidelines sentence to which he could have otherwise been subjected. R. Doc. No. 443, at 67 ¶ 311 (PSR, providing a guideline range of "360 months to life" based on Hudson's offense level of 39 and criminal history category of V).

8

envisions only reasons related to "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)). Though not binding for Hudson's *pro se* motion, *Shkambi*, 993 F.3d at 393, this still informs the Court's analysis. *See United States v. Reynard*, No. 10-329, 2021 WL 2662139, at *5 (E.D. La. June 29, 2021) (Africk, J.) (rejecting arguments relating to the sentence imposed as not within the category of extraordinary and compelling).

Fourth, Hudson's argument that his rehabilitation is extraordinary and compelling lacks merit—as Congress has forbidden the U.S. Sentencing Commission and this Court from considering rehabilitation, standing alone, to be extraordinary and compelling. The statute governing the Sentencing Commission's promulgation of policy statements for compassionate release specifically forbids the Commission from providing that rehabilitation alone is extraordinary and compelling. 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). And the most relevant policy statement has adopted that dictate. U.S.S.G. § 1B1.13, Policy Statement, cmt. n.3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."). Accordingly, Hudson's rehabilitation, though certainly commendable, is not extraordinary or compelling.

### C. Section 3553(a) Factors

Even if the Court were to find that Hudson has presented extraordinary and compelling reasons, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to

the extent they are applicable," the Court concludes that compassionate release is not warranted. *See* 18 U.S.C. § 3582(c)(1)(A). The most applicable factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) the "need for the sentence imposed– (A) to reflect the seriousness of the offense, [or] to promote respect for the law . . . ; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). After considering these factors, the Court concludes that a sentence reduction is inappropriate.

Hudson admitted to being a member—and, by 2010, a co-leader—of the "Harvey Hustlers/Murder Squad," a violent Jefferson Parish street gang that distributed drugs between 2004 and 2012.[25] The gang used "intimidation, violence, threats of violence, assault, and murder" to "preserv[e] and protect[]" its "power, territory, and profits."[26] Through violence and threats of violence, the gang kept "victims, potential victims and witnesses in fear of the enterprise and in fear of its members."[27]

During the conspiracy, Hudson sold drugs while in possession of firearms[28] and admitted to distributing between 280–840 grams of crack cocaine as part of the conspiracy.[29] His unobjected-to PSR also stated that Hudson was "an 'enforcer' or

---

[25] R. Doc. No. 383, at 2 (factual basis).
[26] *Id.*
[27] *Id.* at 2–3.
[28] *Id.* at 4; *id.* at 9; *id.* at 10.
[29] *Id.* at 4.

10

'head buster'" for the gang's leader.[30] After that leader was murdered in 2010, Hudson and his brother, by then "lieutenants" in the gang, ascended to become the "leaders of the organization."[31]

Prior to the instant conviction, Hudson accumulated a number of violent criminal convictions, including: aggravated assault on a police officer with a firearm (age 17); battery of a police officer (age 17); resisting an officer and battery of a police officer (age 20); simple battery, in which Hudson "struck the victim in the head with a steel folding chair" (age 20); and simple battery (age 23).[32] In sum, Hudson's criminal history shows a propensity for violence and a consistent disregard for the law, a record reflecting a stubborn pattern of violence and lawlessness. Now at only age 34, Hudson may very well return to a life of crime if released.

Hudson's sentence is therefore justified chiefly as a means of protecting the public from future crimes that he may commit if released. 18 U.S.C. § 3553(a)(1), (2)(C). His serious sentence also reflects the seriousness of the offense—his armed participation in a massive and violent drug conspiracy. *See id.* § 3553(a)(2)(A). His sentence may also be justified as a means of promoting respect for the law and to deter future similar conduct. *See id.* § 3553(a)(2)(B)–(C).

---

[30] R. Doc. No. 443, at 14–15 ¶ 52.
[31] R. Doc. No. 383, at 4.
[32] R. Doc. No. 443, at 59–61. The first two convictions involved an incident in which Hudson opened fire on a police officer, "discharging several rounds." *Id.* at 18 ¶ 66. Once seized by the officers, Hudson "punched and kicked" them. *Id.* at 18 ¶ 67. He pleaded guilty to aggravated assault on a police officer with a firearm and three counts of battery of a police officer. *Id.* at 18 ¶ 68.

11

**III.**

For the foregoing reasons, the Court concludes that Hudson has failed to present extraordinary and compelling reasons warranting his release and, even if such reasons existed, the Court concludes that compassionate release is not warranted after considering the applicable sentencing factors in 18 U.S.C. § 3553(a). Therefore,

**IT IS ORDERED** that Hudson's motion[33] for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, July 12, 2021.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[33] R. Doc. No. 779.